**ORIGINAL**

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-509V
Filed: March 19, 2018

* * * * * * * * * * * * * *
CYNTHIA LOWERY GRADY,        *    PUBLISHED
                             *
        Petitioner,          *
                             *
v.                           *    Decision Dismissing Petition; Acute
                             *    Poliomyelitis ("Polio"); Post-Polio
SECRETARY OF HEALTH          *    Syndrome; § 16(a)(1); § 16(a)(2);
AND HUMAN SERVICES,          *    Equitable Tolling; Statute of Repose;
                             *    Statute of Limitations
        Respondent.          *
* * * * * * * * * * * * * *

*Cynthia Lowery Grady*, pro se.
*Alexis B. Babcock, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION DISMISSING PETITION[1]

**Roth**, Special Master:

On April 6, 2017, Cynthia Lowery Grady ("petitioner"), acting *pro se*, filed a petition pursuant to the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 *et seq.*[2] ("Vaccine Act" or "the Program"). Petitioner alleges that she developed acute poliomyelitis ("polio") in 1960 and post-polio syndrome in or around 2000 as a result of an oral polio vaccination she received in or around 1959. *See* Petition, ECF No. 1 at 3; ECF No. 12 at 13. For the reasons set forth below, petitioner's claim must be dismissed.

---

[1] Because this Decision has been formally designated "Published," it will be posted on the Court of Federal Claim's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa.

7016 3010 0000 4308 4461

## I. Medical and Procedural History

### A. Medical History

Petitioner was born on September 22, 1954. The medical records petitioner was able to secure reveal the following facts:[3]

Petitioner received a polio vaccine in July of 1959 while living in Florida. In early 1960, she and her family moved from Florida to South Carolina. ECF No. 12 at 13. The records state that they lived within a half-mile from a child that had contracted and died from polio. Shortly thereafter, on July 9, 1960, petitioner developed a fever and vomited. She was taken to a local hospital where she was diagnosed with possible polio. On July 11, 1960, she was transferred to a hospital in Spartanburg, South Carolina with a diagnosis of acute poliomyelitis. According to the record, her condition worsened and she progressed to an iron lung. Petitioner remained in the hospital until August 4, 1960. She was discharged with a description of minimal weakness in her legs and left shoulder girdle. *See* ECF No. 12 at 12-13.

The next medical record submitted by petitioner was a doctor's visit on November 20, 2001, which states that at some point previously, petitioner had been diagnosed with hemochromatosis,[4] fibromyalgia ("status post polio"), bilateral carpal tunnel syndrome, and bipolar disorder. ECF No. 12 at 15. Petitioner also submitted several medical records that document a series of doctors' visits from 2007 to 2017, for a variety of health issues, all noting petitioner's medical history of fibromyalgia, polio, and hemochromatosis. *See* ECF No. 12.[5]

Petitioner alleges in her petition that she only recently learned of the existence of the Vaccine Program and that the government failed to notify her of her ability to file a claim upon enactment of the Vaccine Program. Petitioner further documents her attempts to secure her medical records from South Carolina for several years while being told by hospital staff that the medical records were unavailable. Only after a helpful hospital employee searched for two weeks through microfiche records was she able to finally obtain the medical records she needed to file her petition. She states that for these reasons her case qualifies for equitable tolling. ECF No. 12 at 6-7.

---

[3] Petitioner advised that she was unable to secure records showing proof of vaccination; the records contain only references to the vaccine. Although her medical records are not clear (they were printed from microfiche), petitioner alleges in her petition that she received this vaccine orally and that this may have been the second polio vaccine she received. *See* ECF No. 12. Petitioner's medical history is gleaned from the records that Petitioner was able to secure.

[4] Hemochromatosis is the abnormal deposition of hemosiderin in the parenchymal liver cells, causing tissue damage and dysfunction of the liver, pancreas, heart, and pituitary. *See Dorland's Illustrated Medical Dictionary* 849 (Saunders eds., 31st ed. 2007) ("*Dorland's*").

[5] Petitioner also submitted copies of documents associated with her communication to and assistance from her congressional representative for the filing of her vaccine claim. *See* ECF No. 12.

2

B. **Procedural History**

Petitioner filed her petition and supporting medical records on April 6, 2017. ECF No. 1. The initial audio taped status conference was held on June 8, 2017. Petitioner spoke about her medical conditions, her difficulty securing her medical records, and her diagnosis of post-polio syndrome in or around the year 2000. Petitioner was given the opportunity to file an affidavit, and any additional medical records she wanted the court to consider in support of her claim. ECF No. 10. On July 11, 2017, petitioner filed her affidavit and additional documentation regarding her alleged injuries. *See* ECF No. 12.

A second audio taped status conference was held on September 28, 2017. The time limitations for filing a petition in the Program were explained at length to petitioner as well as other requirements of the program. Petitioner was permitted the opportunity to tell the Court all that she wanted us to know. In so doing, she expressed her frustration with being unable to secure her medical records from when she was a child and her failure to learn about the Program until recently. Respondent's counsel expressed her intention to file a Rule 4 Report and Motion to Dismiss. Petitioner was provided with a full explanation of what respondent was going to do, that she would be afforded the opportunity to respond to respondent's filing in writing and file all of the information she wanted the Court to consider. ECF No. 14.

On November 9, 2017, respondent filed a Rule 4 Report and Motion to Dismiss, *see* ECF No. 15-16, arguing that the petition was filed beyond the time limitations in § 16(a)(1). On November 20, 2017, petitioner filed a response, reiterating most of the allegations contained in her petition and arguing that equitable tolling should be applied. ECF No. 17. Petitioner filed a supplement to her response on December 12, 2017, responding to the factual assertions made by respondent. *See* ECF Nos. 19-20. This matter is now ripe for decision.

## II. Legal Framework

Section 16(a)(1) addresses the issue of limitations of actions for petitions involving vaccines which were administered *prior* to the effective date of the Program, October 1, 1988. The statute states:

In the case of—

(1) a vaccine set forth in the Vaccine Injury table which is administered before October 1, 1988, if a vaccine-related injury or death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury or death after the expiration of 28 months after October 1, 1988, and no such petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than 36 months after the date of administration of the vaccine.

§ 16(a)(1). Petitions involving vaccines that were administered after October 1, 1988, are governed by § 16(a)(2). Because petitioner received the allegedly causal vaccination in 1959, her claim is subject to the provisions contained in § 16(a)(1).

The Vaccine Program was enacted to provide relief to individuals whose injuries or death qualified them or their estate for compensation under the terms of the Program. *Wiley v. United States*, 69 Fed. Cl. 733, 736 (2006). However, the financial appropriation could not possibly be large enough to ensure that all potential retrospective victims whose injuries had occurred prior to the enactment of the Vaccine Program could be compensated. *Id.* Therefore, Congress specified a cutoff date. Any claim based upon a vaccination that occurred before the Program's enactment date (October 1, 1988) had to be filed within 28 months of the enactment date, i.e., before February 1, 1991. With this understanding, the United States Court of Appeals for the Federal Circuit has ruled that § 16(a)(1) is a statute of repose. *See Weddel v. Sec'y of Health & Human Servs.*, 100 F.3d 929, 932 (Fed. Cir. 1996).[6]

A statute of repose is distinguishable from a statute of limitations in that a statute of repose runs from a determined date unrelated to the injury and does not consider the date of injury as a factor when determining the deadline for filed claims. *Wiley*, 69 Fed. Cl. at 736; *Lombardo*, 34 Fed. Cl. 21, 26. As opposed to a statute of limitations, for which the main purpose is "the prevention of stale claims, a statute of repose is designed to provide immunity to the defendant and 'relieve potential defendants from anxiety over liability for acts committed long ago.'" *Wiley*, 69 Fed. Cl. at 373 (citation omitted).

In *Wiley*, the court looked to *Lombardo*'s analysis of the various factors used to conclude that § 16(a)(1) of the Vaccine Act was a statute of repose. 69 Fed. Cl. at 737. Both courts stated that the most significant factor was the plain language of § 16(a)(1), which provides valuable insight into the deadline's classification and "suggests that Congress sought to extend relief to those vaccinated before the Act went into effect, but also wanted to provide the government with a definite date after which it would no longer have to defend against any such retroactive suits." *Id.* (quoting *Lombardo*, 34 Fed. Cl. at 27). Specifically, the statute states that "no petition may be filed" after the deadline. Additionally, while there is no provision in the Vaccine Act that suggests tolling of the statutory filing deadlines, the unambiguous mandatory language in § 16(a)(1) shows that it is a statute of repose.

Congress was keenly aware that some meritorious claims might not be filed before the deadline established in the Act. Congress initially provided a filing period of 24 months for outstanding claims under § 16(a)(1). After it became clear that the Secretary of Health and Human Services was not advertising the Program as Congress had anticipated, this period was later extended to 28 months. 136 Cong. Rec. S15, 198-99 (daily ed., Oct. 12, 1990) (remarks of Sen. Kennedy). Congress feared that individuals who had only just heard of or had not yet heard of the Program would not have sufficient time to collect the necessary materials to file a petition for compensation. *Id.* To address this issue, Congress added four months to the deadline date

---

[6] The Federal Circuit has held that § 16(a)(2)—which governs claims resulting from vaccines administered *after* October 1, 1988—is subject to equitable tolling. *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1340 (Fed. Cir. 2011) (en banc). Although some statements in *Cloer* may be read to apply to *all* Vaccine Act claims, *see, e.g., id.* ("We ... hold that equitable tolling applies to the Vaccine Act."), the court did not purport to overrule *Weddel*'s holding that equitable tolling does not apply to the time limitations set forth in § 16(a)(1). The lower courts thus remain bound by *Weddel* as binding precedent. *See Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006).

4

(February 1, 1991) in order to file a claim in pre-Act cases. Congress was thus aware of the problem identified by petitioner in the instant case and chose to address it. Unfortunately for petitioner, their amendment to the deadline was not generous enough to encompass her claim, filed approximately 29 years too late.

Finally, the legislative history of § 16(a)(1) reinforces the conclusion that Congress intended the provision to be a statute of repose. When introduced in the Senate, the Vaccine Act contained a statute of limitations provision which allowed a petition to be filed after the statutory deadline "if the petitioner demonstrates that he or she was not informed [of the vaccine compensation program], or did not know that the injury was compensable." *Lombardo*, 34 Fed. Cl. at 28 (quoting S. 2117, 98th Cong., 1st Sess. § 2115(b) (1983)). However, when the Vaccine Act was finally enacted by Congress, it did not contain this provision, nor did it permit the filing of petitions after the deadline. § 16(a)(1). Congress was aware of how "to expressly provide for the filing of untimely petitions for compensation when a petitioner was unaware that his injury was compensable, but chose not to do so in the eventual enactment." *Lombardo*, 34 Fed. Cl. at 28. This history indicates that Congress had no intention of allowing petitions based on pre-Act vaccinations to be filed after the February 1, 1991 deadline and, therefore, did not want § 16(a)(1) to be equitably tolled. All of these factors demonstrate clear congressional intent to make § 16(a)(1) a statute of repose. *Wiley*, 69 Fed. Cl. at 737. The statutory time deadline associated with petitioner's 1959 polio vaccination is subject to § 16(a)(1), and is therefore not subject to equitable tolling.

Section 16(a)(2) governs claims resulting from vaccines administered *after* October 1, 1988. The statute of limitations contained in the Act reads:

> (2) a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

§ 16(a)(2). The Federal Circuit has recently held that § 16(a)(2) is a statute of limitations, and is subject to equitable tolling under very limited circumstances. *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1340 (Fed. Cir. 2011) (en banc). In other words, § 16(a)(2) allows courts to forgive untimely claims in "extraordinary circumstances" *Cloer*, 654 F.3d at 1344 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). This equitable relief has been granted only sparingly in the federal courts. The Court has already held that a lack of knowledge of the existence of the Vaccine Program, and/or the inability to obtain all the medical records necessary to support a claim, fails to constitute an extraordinary circumstance permitting equitable tolling of the statute of limitations. *See e.g., Phillips v. Sec'y of Health & Human Servs.*, No. 16-1045V, 2017 WL 1293445, at *4 (Fed. Cl. Apr. 6, 2017) (citation omitted)); *see also Brice v. Sec'y of Health & Human Servs.*, 44 Fed. Cl. 673, 677-78 (1999).

## III. Analysis

### A. Time Limits for Petitioner's Injuries from her Polio Vaccine

Petitioner's medical records indicate an onset of polio in or around July of 1960 though it appears that her polio vaccine was administered a year prior in 1959. She was subsequently diagnosed with post-polio syndrome in around the year 2000. She claims that both ailments were a result of the polio vaccination she received in or around 1959.

Petitioner's medical records support a finding that the vaccine in question was administered approximately 29 years prior to the Vaccine Program's effective date on October 1, 1988. For a pre-Act vaccination to be timely, according to § 16(a)(1), petitioner's petition for her polio vaccine would have had to have been filed within the 28-month deadline following October 1, 1988, or prior to February 1, 1991. Here, petitioner filed her petition on April 6, 2017, more than 26 years after the deadline. Her claim arising from her polio vaccination is therefore time-barred by § 16(a)(1).

### B. Time Limits for Petitioner's Subsequent Development of Post-Polio Syndrome

The medical records filed in this matter do not indicate when the onset of petitioner's post-polio syndrome occurred but it appears that petitioner was diagnosed with post-polio syndrome in or around 2000.[7] Section 16(a)(2), which governs the filings of all post-Act cases states that "no petition may be filed for compensation under the [Vaccine Act] for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." § 16(a)(2). The fact remains that petitioner received her polio vaccine(s) in or around 1959, making this case a pre-Act case subject to § 16(a)(1). However, even if petitioner's post-polio syndrome could be subject to the post-Act statute of limitations under § 16(a)(2), her claim would still be untimely. Petitioner alleges that she was diagnosed with post-polio syndrome in or around the year 2000. ECF No. 1 at 3; *see also* ECF No. 12 at 6. Petitioner's petition would have been due 36 months after the first symptom or manifestation of post-polio syndrome, which would have been in or around 2003. Petitioner filed her petition in 2017. Accordingly, petitioner's claim is untimely under § 16(a)(2).

### C. Availability of Equitable Tolling

Petitioner argues that equitable tolling must be applied because she was unaware of the Program and then was unable to obtain her medical records for several years after she learned of the Program. While equitable tolling can apply to *post*-Act vaccination claims, the Federal Circuit has clarified that equitable tolling is only available to post-Act claims in very limited circumstances in which "some extraordinary circumstance stood in [petitioner's] way." *Cloer*, 654 F.3d at 1344 (quoting *Pace*, 544 U.S. 408 at 418). This equitable relief has been granted only sparingly in federal courts.

---

[7] Petitioner was afforded the opportunity to file any and all records associated with her diagnosis of post-polio syndrome.

Her argument for the application of equitable tolling in her case is duly noted. However, the issue of the failure to learn of the Program was considered by the Court previously and found not to constitute grounds for tolling of the statute of limitations. *See Phillips*, 2017 WL 1293445 at *4. Additionally, the failure to obtain the medical records necessary to support the petition has also been addressed by the Court and found not to be sufficient for equitable tolling to be applied. *See Brice*, 44 Fed. Cl. at 677-78.

### III. Conclusion

I appreciate the frustration petitioner expressed to the Court during the status conferences related to her inability to secure her medical records from her childhood, and not knowing of the existence of the Vaccine Program until sometime around 2001. Petitioner went to great lengths to secure the medical records filed in this matter and to finally file her petition in 2017. However, constrained by the law that governs these claims, petitioner's claims are time-barred by both the statute of repose, § 16(a)(1), for the claims arising from her polio vaccine in 1959, and by the statute of limitations, § 16(a)(2), for her development of post-polio syndrome in or around the year 2000. Therefore, the Court must grant respondent's motion to dismiss the claim as untimely filed. Respondent's motion to dismiss is hereby **GRANTED**. The petition is therefore dismissed. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Date: 3/19/18

Mindy Michaels Roth
Special Master